**Roger Eugene WALDRON,
Appellant (Plaintiff),**

v.

**Earl WILSON and Max L. Wilson,
Appellees (Defendants).**

No. 34A02–8603–CV–89.

Court of Appeals of Indiana,
Second District.

April 8, 1987.

Rehearing Denied May 26, 1987.

Dan L. Clayton, Indianapolis, for appellant.

Daniel J. Gamble, Ellis, Gamble and Nolan, Kokomo, for appellees.

BUCHANAN, Judge.

CASE SUMMARY

Plaintiff-appellant Roger Eugene Waldron (Waldron) appeals from the denial of his motion to amend his complaint, claiming that under Ind. Rules of Procedure, Trial Rule 15(C) his amended proposed complaint

related back to the date of the filing of his original complaint.

We affirm.

## FACTS

On October 14, 1980, Waldron was injured when he caught his foot in a corn drying auger while it was in operation on a farm located in Howard County, Indiana. On October 14, 1982, Waldron commenced this action against Max L. Wilson (Max) and Earl Wilson (Earl) [hereinafter collectively referred to as the Wilsons] for the negligent care and maintenance of the corn drying auger. The sheriff of Howard County served a summons and the complaint upon each of the Wilsons on October 15, 1982. The Wilsons filed an answer to the complaint on November 22, 1982. The answer contained an admission that the Wilsons owned the farming operation where Waldron was injured. However, on April 29, 1983, the Wilsons moved to amend their answer by asserting that the farming operation was in fact owned by Wilson Livestock Farms, Inc.

On May 17, 1983, Waldron moved to amend his complaint "to indicate that the farming operation at which the plaintiff was injured was owned by Wilson Livestock Farms, Inc., an Indiana corporation." Record at 27. Waldron's proposed amended complaint was identical to the original complaint except that Wilson Livestock Farms, Inc. was named additionally as a defendant in the caption. The trial court granted the Wilsons' motion to amend their answer and denied Waldron's motion to amend his complaint on August 8, 1984. On May 17, 1985, Waldron moved for the trial court to reconsider its ruling on his previous motion to amend. This motion was denied by the trial court on September 24, 1985. The trial court explained "that if the party [Waldron] seeks to add by amendment did receiv [sic] notice, constructive or otherwise, such alleged notice came after the applicable statue [sic] of limitations had expired." Record at 42. The trial court determined that there was no just reason for delay and directed entry of judgment against Waldron as to Wilson Livestock Farms, Inc., pursuant to T.R. 54(B).

Additionally, certain facts were stipulated to by the parties. Max and Earl are father and son and were engaged in a farming operation continuously from 1955 to January 11, 1980. On January 11, 1980, Wilson Livestock Farms, Inc. (the Corporation) was incorporated. The Corporation carried on substantially the same farming business as the Wilsons had carried on before the incorporation. The Wilsons were employees and the sole shareholders of the Corporation. Earl was the president and director of the Corporation from its inception through August 18, 1983. Max was secretary-treasurer and a director of the Corporation from its inception through August 18, 1983. There were no other officers or directors during the same time period. In October, 1980, Max was resident agent of the Corporation.

The injury to Waldron took place on a farm owned and operated by the Corporation. The real estate was conveyed to the Corporation on February 1, 1980. All the equipment used in the farming operation in 1980 was owned by the Corporation.

Although the Wilsons had knowledge of Waldron's injury within one hour from the time it happened, Waldron did not place the Wilsons on notice of his claim prior to filing his complaint. No summons or other notice was directed by Waldron to the Corporation prior to October 15, 1982 when the complaint was served. Meridian Mutual Insurance Company, the liability insurance carrier for Max, Earl, and the Corporation, was notified by American States Insurance Company, the workmen's compensation carrier for Waldron's employer, of its claim for subrogation. The letters, dated May 27, 1981 and July 12, 1982, referred to the insured as Max and Earl and made no mention of the Corporation as an insured.

## ISSUES

Two issues are raised in this appeal:
1. Did Waldron pursue a timely appeal in this action?
2. Did the trial court err in denying Waldron's motion to amend?

## DECISION

### ISSUE ONE—Did Waldron pursue a timely appeal in this action?

PARTIES' CONTENTIONS—Waldron contends that his appeal is timely because the denial of his motion to amend was not appealable until September 24, 1985, when the trial judge certified the denial pursuant to T.R. 54(B). Waldron also argues that the trial judge was entitled to reconsider its previous rulings at any time pursuant to T.R. 53.4.

The Wilsons argue that the trial court's denial of Waldron's motion to amend on August 8, 1984 was a final and appealable judgment because it is analogous to the denial of a petition to intervene. They argue that, in any event, the appeal from the trial court's denial of Waldron's motion to reconsider his motion to amend was not timely filed. The Wilsons assert that the time to file his motion to correct errors should commence from the time Waldron's motion to reconsider was deemed denied pursuant to T.R. 53.4.

CONCLUSION—Waldron's appeal was timely.

■ The trial court's T.R. 54(B) certificate on September 24, 1985 makes the order appealable. *Accord Lockett v. General Fin. Loan Co.* (5th Cir. 1980), 623 F.2d 1128; *see also Stanray Corp. v. Horizon Construction, Inc.* (1976), 168 Ind.App. 164, 342 N.E.2d 645; *Geyer v. City of Logansport* (1974), Ind.App., 317 N.E.2d 893. T.R. 54(B) provides in pertinent part:

"A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment ..."

The trial court made the express determinations required by T.R. 54(B). T.R. 54(B) is applicable because judgment pertained only to the Corporation and thus left unresolved the claims against Max and Earl. Any attempt by Waldron to appeal the denial of his motion to amend prior to the trial court's T.R. 54(B) certificate would have been premature. The denial of a motion to amend is an interlocutory order and not a final appealable order. *See* Annot., 16 A.L.R.2d 1023 (1951); *cf.* T.R. 24(C) (motion to intervene is interlocutory for all purposes unless made final under T.R. 54(B)).

Waldron's appeal was timely, even though the trial court ruled on Waldron's motion to reconsider 130 days after the filing of his motion. Although T.R. 53.4 provides that unless a motion is ruled upon within five days it is deemed denied, it does not necessarily follow that the motion to correct errors must be filed within 60 days from the expiration of the five-day period. Before a motion to correct errors becomes appropriate, there must be a final judgment or an appealable final order entered. *Sekerez v. Board of Sanitary Comm'rs* (1973), 261 Ind. 398, 304 N.E.2d 533; *Carroll v. Lordy* (1982), Ind.App., 431 N.E.2d 118. The effect of the five-day expiration is of no consequence because the trial court's order did not become an appealable final order until September 24, 1985, when the trial court certified its order pursuant to T.R. 54(B). *Cf. Carroll, supra* (no final judgment within meaning of T.R. 59 to commence running of sixty-day limitation to file motion to correct errors when court did not express in writing that there was no just reason for delay). A trial court has the inherent power to reconsider any of its rulings until judgment is entered and no error results from the trial court's ruling on a motion beyond the five-day period of T.R. 53.4. *Wisconics Eng'g, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, *trans. denied; Biggs v. Marsh* (1983), Ind.App., 446 N.E.2d 977, *trans. denied.*

### ISSUE TWO—Did the trial court err in denying Waldron's motion to amend?

PARTIES' CONTENTIONS—Waldron contends that the trial court erred because the Corporation had constructive notice of the action. He argues that there is a close relationship between the Corporation and the Wilsons and thus, the Wilsons' receipt of the complaint and their knowledge of the time, place and nature of Waldron's

injury was sufficient notice to the Corporation.

Wilsons respond that the Corporation did not have notice of the action within the statute of limitations period because the summons was served one day beyond the applicable period. Additionally, they argue that the suit against the Wilsons is not constructive notice to the Corporation because the Corporation is a separate and distinct entity.[1]

CONCLUSION—The trial court did not err in denying Waldron's motion to amend his complaint.

■ T.R. 15(C) provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:

(1) *has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and*

(2) *knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him."*

(Emphasis supplied). The resolution of this dispute depends upon whether the Corporation received notice of the institution of Waldron's action "within the period provided by law for commencing the action."

No Indiana case has considered the application of that language of T.R. 15(C) when the complaint is timely filed, but the summons and the complaint are served after the statute of limitations expired. In *Creighton v. Caylor-Nickel Hosp., Inc.* (1985), Ind.App., 484 N.E.2d 1303, *trans. denied,* the plaintiffs filed a complaint with the Indiana Patient's Compensation Authority five days before the statute of limitations had run on the malpractice claim. A copy of the complaint was forwarded to the Caylor-Nickel Clinic, the named defendant, two days before the statute of limitations would have run on the claim. The complaint was received by the clinic's risk manager four days after the statute of limitations had run. The following day, the plaintiffs learned that they should have sued the Caylor-Nickel Hospital, and three days later they filed an amended complaint naming the proper defendant. In *Creighton,* we concluded that the hospital had received notice within the statute of limitations. That conclusion, however, was based on the fact that the Indiana Patient's Compensation Authority, an *agent* of all health care providers, received notice of the suit five days before the limitations period had expired. In the case under consideration, no agent of the Corporation received the complaint prior to the expiration of the applicable period.

Likewise, the Indiana Supreme Court's decision in *Czarnecki v. Lear Siegler, Inc.* (1984), Ind., 471 N.E.2d 299, is of little help in interpreting the language of T.R. 15(C), even though the facts are similar to the present case. In *Czarnecki,* the complaint was filed on August 31, 1977, one day before the statute of limitations had run. The initial summons was addressed to the Hinson Cab Company. When Czarnecki's attorney could find no address for the Hinson Cab Company, he mailed the summons to C.T. Corporation, the resident agent of International Harvester. The summons and complaint with respect to Hinson Cab Company was not served until September 2, 1977, *after* the statute of limitations had expired. Royal Industries, Inc., Hinson Division, the proper defendant, never received notice of the action until three years later. The supreme court concluded that service on the proper defendant would not relate back pursuant to T.R. 15(C) by service directed to Hinson Cab Company be-

---

1. We do not address in this opinion whether there was a close identity of interest between the Wilsons and the Corporation because the

necessary notice under T.R. 15(C) was not given to either the named defendants, the Wilsons, or the party subsequently named, the Corporation.

cause the named defendant and subsequently named defendant were entirely different and unrelated parties. The court, however, added the following dictum:

> "[r]ule 15(C) would relate back here if the summons addressed to Hinson Cab Company had actually been served on Royal Industries, Inc., Hinson Division, and Royal would therefore have been given notice that suit was being brought ... and that they were the intended target defendant even though misnamed by the summons served. An amended complaint served after the running of the statute of limitations which properly named Royal Industries, Inc., Hinson Division, as a defendant, would have related back under 15(C) because clearly they would have had notice of the institution of the action and would have known that but for a mistake of misnomer they were the intended target defendant."

*Id.* at 301. The supreme court does, however, elucidate the general principle of the relation back doctrine, i.e., generally, amended complaints will relate back when the subsequently named defendant had notice of the suit. It should be added that the notice must be within the period provided by law for commencing the action. The supreme court recognized the importance of this requirement, citing *Simmons v. Fenton* (7th Cir.1973), 480 F.2d 133. In *Simmons*, the court said:

> "The time within which the action against Doris J. Fenton necessarily had to have been brought expired on August 28, 1970. Even if it might be said that she should have known immediately of the case of mistaken identity when service was made upon her 12–year-old daughter, or, to go further, even if the service might be said to have been upon her, Rule 15(C) is not satisfied, since

actual service on whoever was served was not effected until September 22, 1970, at least three weeks after the tolling of the statute of limitations."

*Id.* at 136. Thus, we do not construe the dictum in *Czarnecki, supra,* to imply that service of the summons to Royal *after* the statute of limitations met *all* of the requirements of T.R. 15(C).

There is another string to our bow in this case. T.R. 15(C) is essentially the same as FED. R. CIV. P. 15(c), so we may consider federal authorities. *Honda Motor Co. v. Parks* (1985), Ind.App., 485 N.E.2d 644. As a result of a conflict among the federal courts of appeals,[2] the United States Supreme Court recently explained its interpretation of FED. R. CIV. P. 15(c) in *Schiavone v. Fortune* (1986), —— U.S. ——, 106 S.Ct. 2379, 91 L.Ed.2d 18.

In *Schiavone,* three complaints were filed within the limitations period but service was not attempted until after that period expired. The petitioners subsequently amended their complaint to change the name of the captioned defendant from "Fortune" to "Fortune, also known as Time, Incorporated." *Id.* 106 S.Ct. at 2381. The Court affirmed the district court and court of appeals observing that although the amended complaints adequately named Time as a defendant, the amendments did not relate back to the filing of the original complaints because Time did not receive notice of the action within the period provided by law for commencing the action:

> "[w]e do not have before us a choice between a 'liberal' approach toward Rule 15(c), on the one hand, and a 'technical' interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the Rule provides in plain language. We accept the Rule as meaning what it says.

---

**2.** There was no unanimity among the circuits concerning the interpretation of Fed.R.Civ.P. 15(c)'s notice provision. The Second, Fifth and Sixth Circuits had determined that the rule could not be read literally to require notice to the substitute party within the statutory limitations period, and thus allowed a reasonable period for service of process. *See, e.g., Ringrose v. Engelberg Huller Co.* (6th Cir.1982), 692 F.2d 403; *Kirk v. Cronvich* (5th Cir.1980) 629 F.2d

404; *Ingram v. Kumar* (2d Cir.1978), 585 F.2d 566, *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499. Other circuits literally applied the strict notice requirement. *See, e.g., Cooper v. United States Postal Serv.* (9th Cir.1984), 740 F.2d 714, *cert. denied,* 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316; *Hughes v. United States* (7th Cir.1982), 701 F.2d 56; *Archuleta v. Duffy's Inc.* (10th Cir.1973), 471 F.2d 33.

We are not inclined, either, to temper the plain meaning of the language by engrafting upon it an extension of the limitations period equal to the asserted reasonable time, inferred from Rule 4, for the service of a timely filed complaint.

. . . .

The linchpin is notice, and notice within the limitations period."

*Id.*, 106 S.Ct. at 2385.

This unequivocal approach leaves us no alternative. When service is not completed until after the limitations period has expired, when no notice has been given to either the named defendant or the party subsequently named, the amendment to change a party will not be allowed. Neither the Wilsons nor the Corporation had notice of the institution of Waldron's action prior to the expiration of the statute of limitations. "Notice of the institution of the action" means notice of the filing of the law suit and not notice of the incident giving rise to the law suit. *See* Annot., 11 A.L.R. Fed. 269, § 4 (1972); 3 J. Moore, Moore's Federal Practice ¶ 15.15[4.–2] (1985 2d. ed.); 6 Wright & Miller, Federal Practice and Procedure: Civil § 1498 (1971); *see also Slack v. Treadway Inn of Lake Harmony, Inc.* (M.D. Pa. 1974) 388 F.Supp. 15 (notice not sufficient when defendant knew of plaintiff's fall and resulting injury and had sent insurance investigator to inquire about accident but received no notice of lawsuit itself).

While a strict interpretation of T.R. 15(C) may seem Draconian, it is within the ambit of the decided cases.

The trial court properly denied Waldron's motion to amend his complaint.

Affirmed.

SULLIVAN, and ROBERTSON, JJ., concur.