Ray J. SANDERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 31A04–9904–CR–160.

Court of Appeals of Indiana.

March 8, 2000.

Susan E. Schultz, Corydon, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

After a jury trial, Ray J. Sanders was convicted of child molesting,[1] a Class C felony. He now appeals, raising the following issues for review:

I. Whether the trial court erred in admitting evidence of Sanders' misconduct preceding the molestation.

II. Whether the prosecutor committed misconduct during closing argument amounting to fundamental error.

III. Whether there is sufficient evidence to support his conviction.

IV. Whether his sentence is manifestly unreasonable.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 3, 1998, twelve-year-old J.Y. spent the night with a friend, H.S. H.S. lived with her stepfather, Gervis Hasty. Three other girls and several adults were present through the course of the evening, including Sanders. Sanders gave money for alcohol to Charles Payne, who purchased several bottles. Everyone drank the alcohol, and some people also smoked marijuana. J.Y. drank some alcohol and became extremely intoxicated. Later in the evening, one of the girls discovered Sanders performing sex acts on an incapacitated J.Y.

Sanders was arrested and charged with two counts of child molesting and one count of criminal deviate conduct. The jury convicted him of one count of child molesting, acquitted him of criminal deviate conduct, and was unable to reach a verdict on the second count of child molesting. The trial court sentenced him to an aggravated term of eight years' imprisonment. He now appeals.

## DISCUSSION AND DECISION

### I. Other misconduct

Sanders first contends that the trial court erred in admitting evidence of extraneous bad acts. At trial, the State introduced evidence that earlier in the evening, Sanders had offered J.Y. and two of her friends twenty-five dollars if they would submit to oral sex with him. Sanders argues that this evidence was inadmissible under Indiana Rule of Evidence 404(b) because it was offered only to show Sanders' bad character and was unnecessary and irrelevant.

The evidentiary rulings of a trial court are afforded great deference and are reversed on appeal only upon a showing of an abuse of discretion. *Herrera v. State*, 710 N.E.2d 931, 935 (Ind.Ct.App.1999). Rule 404(b) provides that evidence of other crimes, wrongs, or acts is inadmissible when offered to prove the character of a person or show action in conformity therewith. Such evidence may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ind. Evidence Rule 404(b). The effect of this rule, then, is that evidence is excluded only when it is intro-

---

1. *See* IC 35–42–4–3.

duced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Herrera,* 710 N.E.2d at 935. Evidence of uncharged misconduct which is probative of the defendant's motive and which is "inextricably bound up" with the charged crime is properly admissible under Rule 404. *Id.*

■■■ An analysis of admissibility under Rule 404(b) necessarily incorporates the relevancy test of Rule 401 and the balancing test of Rule 403. *Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Utley v. State,* 699 N.E.2d 723, 727–28 (Ind.Ct.App.1998), *trans. denied.* The trial court has the discretion to admit even marginally relevant evidence. *Herrera,* 710 N.E.2d at 935. Only where the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence will that evidence be excluded. Ind. Evidence Rule 403. The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission. *Sanders,* 704 N.E.2d at 124. We review the trial court's balancing decision under Rule 403 for an abuse of discretion. *Id.*; *Herrera,* 710 N.E.2d at 935.

■■■ In *Swanson v. State,* 666 N.E.2d 397, 398 (Ind.1996), our supreme court explained the type of evidence that Rule 404(b) was designed to exclude. It stated that "[t]he paradigm of such inadmissible evidence is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." *Id.* The evidence about which Sanders complains is not of this type. The evidence at issue here pertained to misconduct that occurred only hours before the crime charged and involved the same victim as the crime. Thus, it was not evidence of an unrelated bad act occurring at another time offered only to create the inference that Sanders is a man of bad character. Instead, this evidence was highly probative of Sanders' motive to molest J.Y. and was "inextricably bound up" with the charged offense. Sanders offered J.Y. and two of her friends money to submit to oral sex with him. When they refused, he waited until J.Y. became extremely intoxicated on alcohol he purchased, then assaulted her. The evidence of Sanders' earlier offers of money for sex with the girls is part and parcel of the charged offense. In terms of the language of Rule 404(b), it is not evidence of "other" wrongs, but of the charged offense. Further, the prejudicial nature of the evidence does not substantially outweigh the probative value. While the evidence was undoubtedly prejudicial, it was also highly probative of Sanders' perpetration of the charged offense. It reveals that Sanders wished to have sexual contact with J.Y. and waited for the opportunity to do so. There was no error in the admission of this evidence.

## II. Prosecutorial misconduct

Sanders next asserts that the prosecutor committed misconduct in her closing argument by repeatedly referring to Sanders as a liar. Because he did not object to the prosecutor's comments at trial, he now contends that the conduct amounted to fundamental error.

■■■ When reviewing a claim of prosecutorial misconduct, we first determine whether the prosecutor engaged in misconduct. Then, we determine whether the misconduct placed the defendant in a position of grave peril. *Wine v. State,* 637 N.E.2d 1369, 1376 (Ind.Ct.App.1994), *trans. denied* (citing *Burris v. State,* 465 N.E.2d 171, 186 (Ind.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809 (1985)). Whether the defendant is placed in grave peril is determined by "the probable persuasive effect of the misconduct on the jury's decision." *Id.* Even if an isolated instance of misconduct does not

rise to the level of grave peril, if repeated instances indicate a deliberate attempt to inject prejudice, a reversal may be appropriate. *Id.* However, "[t]he gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of the impropriety of the conduct." *Jenkins v. State,* 695 N.E.2d 158, 160 (Ind. Ct.App.1998) (quoting *Robinson v. State,* 693 N.E.2d 548, 551 (Ind.1998)).

■■■ In *Marshall v. State,* 505 N.E.2d 853, 856 (Ind.Ct.App.1987), *impliedly overruled on unrelated grounds by Whitehead v. State,* 511 N.E.2d 284 (Ind.1987), we considered the same argument Sanders now makes. There, the defendant argued that the prosecutor had committed misconduct by making remarks that implied that he believed the defendant was guilty and a liar. We found that such remarks, while not laudable, are of little persuasive effect to juries. We explained:

> "By the nature of the proceedings, the jury was exposed to the fact that the deputy prosecutor had investigated the case, approved the Information, brought Marshall to trial, presented evidence against him, and severely challenged Marshall's story on cross-examination, to the point of impeaching his credibility with proof of prior felonies. Only an incredibly naïve juror would not, from those events, conclude that the deputy indeed believed Marshall guilty and believed him to be a liar."

*Id.*

Likewise, in *Hobson v. State,* 675 N.E.2d 1090 (Ind.1996), the defendant contended that the prosecutor committed misconduct by calling him a liar. Our supreme court rejected this argument, noting that in final argument, a prosecutor "can 'state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge that is independent of the evidence.' " *Id.* at 1096 (quoting *Kappos v. State,* 577 N.E.2d 974, 977 (Ind.Ct.App.1991), *trans. denied* ). The court concluded that because the testimony of the various wit-

nesses was inconsistent, the prosecutor was entitled to deduce that some of the witnesses must not have been testifying truthfully and invite the jury to determine which witnesses were telling the truth. *Id.* It held that the prosecutor's conduct was not improper. *See also Kappos,* 577 N.E.2d at 977 (not misconduct to call defendant liar when evidence at trial indicated that either defendant was lying, or numerous other witnesses were).

■■■ In this case, a parade of witnesses testified that Sanders was at the Hasty home all evening and that they saw him molest J.Y. In his first statement to police, Sanders stated that he was at the Hasty residence for only about ten minutes that evening. At trial, he admitted he had lied to police. He testified that although he stayed a while, he became sleepy waiting for a friend to get ready to leave, went into the bedroom alone, and laid down and fell asleep. Thus, by his own admission, Sanders is a "liar." Further, the evidence adduced at trial indicates that either Sanders or the State's witnesses are lying, because the two accounts of the events of that evening are diametrically opposed. The prosecutor was entitled to argue to the jury in closing that it should conclude that Sanders was the one not being truthful. Further, we agree with our reasoning in *Marshall* that such remarks by a prosecutor carry little persuasive effect with the jury. The jury understood in this case that the prosecutor believed Sanders was lying when he denied molesting J.Y., or she would not have been prosecuting him. There was no error here.

■■■ More troubling, however, is the next comment with which Sanders takes issue. Near the conclusion of her closing argument, the prosecutor stated: "Now, Ladies and Gentlemen, I want to finally say to you that my role and Ron's role as a prosecutor we are considered to be ethic ministers of justice." *Record* at 762–63. Sanders complains that this comment improperly bolstered the prosecutor's assess-

ment of the witnesses' credibility and constitutes fundamental error.

In *Bardonner v. State*, 587 N.E.2d 1353 (Ind.Ct.App.1992), *trans. denied*, the defendant alleged that the prosecutor committed misconduct during voir dire by making comments exalting the role of the prosecutor. In that case, the prosecutor read from a United States Supreme Court case and interspersed the quoted language with comments and questions of the prospective jurors. The effect of the entire discussion was to leave the jurors with the impression that the prosecutor has the obligation to seek the truth and see that justice is done, while the role of the defense attorney is to confuse and impeach even a truthful witness in an effort to create a defense for his client, even where doing so has no relation to the search for truth. We held that the prosecutor's comments did constitute misconduct and reversed the defendant's conviction. We stated that the prosecutor's comments were not "the law or proper for instructing the jury on the law," *id.* at 1359, and found them to be of "no redeeming legal value." *Id.* at 1360. Because the comments occurred during voir dire, the jury was tainted from the beginning and their evaluation of every piece of evidence was colored by this misconduct. In rendering our decision, we contrasted the case of *Hubbard v. State*, 262 Ind. 176, 313 N.E.2d 346 (1974), in which the supreme court found no reversible error where the prosecutor read from the same Supreme Court case, but did so during closing arguments. The court noted that such remarks coming at the conclusion of a long trial after the jury had heard the evidence were of little impact. However, because the remarks in Bardonner's case tainted the entire proceeding, he was entitled to a new trial. *Id.* at 1358.

In *Coy v. State*, 720 N.E.2d 370, 372–73 (Ind.1999), our supreme court recently faced a challenge to nearly the same phrase. In that case, the prosecutor called himself a "minister of justice" during voir dire. The trial court in that case examined the holding of *Bardonner* and determined that there were two components: 1) painting prosecutors as ministers of justice, and 2) denigrating defense counsel. The trial court overruled defense counsel's objections to the prosecutor's comment because only one of the *Bardonner* components was present. The supreme court agreed with this resolution, but noted that "in the right circumstances such comments might improperly sway a jury in favor of conviction." *Id.* The court deferred to the trial court's judgment on this issue, and noted that the while the trial court may "well have been warranted in curtailing the prosecutor's comments in this case, he did not err in allowing them to stand." *Id.* at 373.

In this case, we hold that the prosecutor's comment does amount to prosecutorial misconduct. Unlike in *Coy*, defense counsel did not object to the prosecutor's comment, so we do not have the benefit of the trial court's judgment as to the fairness of this tactic in the circumstances of this case. The prosecutor's description of her position as an "ethic minister of justice" conveyed to the jury that seeking justice was her paramount concern, and by negative implication, conveyed the idea that the defense counsel's job was something else altogether. Because the credibility of the witnesses was the only issue in this case, we find that attempting to bolster the State's witnesses by portraying the prosecutor as a pursuer of justice was impermissible. Prosecutors should be more circumspect if they feel the need to explain their role in our criminal justice system to jurors.

Although the prosecutor committed misconduct, we hold that it did not place Sanders in grave peril. As in *Hubbard*, the prosecutor's comment came in closing arguments. By that time, the jury had had the opportunity to observe firsthand the role of the prosecutor and defense counsel and had received all of the evidence without being prejudiced by the remarks. Further, the evidence against Sanders was overwhelming and included

over a half-dozen eyewitnesses. Although the evidence did consist of Sanders' word versus that of the other witnesses, it stretches the bounds of credulity to believe that so many people, including Payne, a self-described friend of Sanders and a reluctant witness, would conspire to tell virtually the same story about the events of June 3, 1998. The prosecutor's comment did not constitute fundamental error.

### III.  Sufficiency of the evidence

Sanders next argues that there was insufficient evidence to support his conviction. Specifically, he argues that all of the witnesses admitted to being under the influence of intoxicants at the time of the events in question. Therefore, their testimony was of insufficient probative value to support Sanders' conviction.

In reviewing a claim of insufficient evidence, the reviewing court will consider only the evidence most favorable to the verdict and any reasonable inferences to be drawn therefrom. *Torres v. State*, 673 N.E.2d 472 (Ind.1996). We will neither reweigh the evidence nor judge the credibility of the witnesses, and we will affirm if there is substantial evidence of probative value supporting the verdict. *Randolph v. State*, 695 N.E.2d 615, 616 (Ind.Ct.App.1998) (citing *Owens v. State*, 659 N.E.2d 466, 474 (Ind.1995)). Reversal is mandated where after reviewing such evidence, the reviewing court concludes that no reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Joyner v. State*, 678 N.E.2d 386 (Ind.1997).

Numerous witnesses testified about the events surrounding the molestation. No fewer than seven witnesses testified that they personally saw Sanders in various stages of undress engaging in sex acts with J.Y., who was nude from the waist down. The accounts of the various witnesses were largely consistent in the major details. The picture of the evening that emerges is that of a "party" atmosphere. Sanders offered at least three of the girls money if they would submit to

oral intercourse with him, but was rebuked. Sanders directed Payne to purchase alcohol, which the girls drank. J.Y. became extremely intoxicated, and Sanders took her into the bedroom and had sexual contact with her while she was immobilized by intoxication. When another girl inadvertently discovered what was occurring, she confided in her friends. After they confirmed it, they immediately ran to Payne for help. Payne testified that he ran to the bedroom and pulled Sanders off J.Y. He stated that J.Y. was lying in the bed with her legs in the air, and Sanders was kneeling in front of her, moving back and forth. He stated that Sanders was "screwing" or "humping" J.Y. None of the witnesses reported the assault for fear that they would be prosecuted for their role in the evening's events.

In spite of the largely consistent testimony of seven witnesses, Sanders maintains that the witnesses' intoxication renders their accounts of the night in question lacking in probative value. We disagree. The witnesses all testified about their use of intoxicants on the night in question, and the jury had the benefit of full disclosure on this subject. Whether the witnesses were intoxicated at the time of perceiving these events goes to the weight to be afforded their testimony, which is a matter within the discretion of the trier of fact, in this case, the jury. *See Hicks v. State*, 536 N.E.2d 496, 498 (Ind. 1989) (rejecting defendant's challenge to sufficiency of evidence for rape where victim was intoxicated at time; jury was apprised of the intoxicants consumed by victim, and it was within its province to weigh evidence and judge credibility of witnesses). There was sufficient evidence to support Sanders' conviction.

### IV.  Sentence

Finally, Sanders contends that his sentence is manifestly unreasonable. He asserts that his sentence is too harsh in light of his character and the character of the offense. Although we have the author-

ity to review and revise sentences, we will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Merrill v. State,* 716 N.E.2d 902, 905 (Ind.1999) (citing *Carter v. State,* 711 N.E.2d 835, 841 (Ind.1999); Ind. Appellate Rule 17(B)). Our review is deferential to the trial court. As our supreme court explained: "[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Id.* (quoting *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998)).

Sanders was convicted of child molesting after having sexual contact with an intoxicated twelve-year-old girl, who in the opinion of two eyewitnesses, "didn't know what she was doing" and "didn't know what was going on." *Record* at 364, 407. Sanders took advantage of J.Y.'s youth, inexperience, and impaired state of mind and assaulted her, after taunting her earlier in the day with offers of money for sex and being rebuked. As for Sanders' character, while it is true that his only prior convictions were misdemeanors, his criminal history consists of numerous arrests, and two convictions for domestic battery. This criminal history evidences a disrespect for the bodily integrity of others which culminated in the sexual assault of a child. We see nothing in the character of this offense or this offender that suggests that Sanders' eight-year sentence is too harsh.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.