**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KAREN CELESTINO-HORSEMAN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AGUSTIN MARTINEZ, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 49A02-1203-CR-197 |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr. , Judge
Cause No. 49G02-1109-FA-69113

**December 5, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Agustin Martinez (Martinez), appeals his convictions for two Counts of child molesting, Class C felonies, I.C. § 35-42-4-3.

We affirm.

## ISSUES

Martinez raises one issue on appeal, which we restate as the following two issues:

(1) Whether the trial court committed fundamental error in admitting testimony; and

(2) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that Martinez committed two Counts of child molesting.

## FACTS AND PROCEDURAL HISTORY

In 2011, Susan Henthorne (Henthorne) lived in a tri-level home on the south side of Indianapolis with her three children. In July of 2011, Melissa Harris (Harris) and her twelve year old daughter, M.H., moved in with Henthorne and her children. Harris' boyfriend, Martinez, moved into the house shortly thereafter. Harris and Martinez resided on the bottom level of the tri-level house where there was a family room, a half bathroom, and a hallway to one of the bedrooms. The middle level of the house held a kitchen, dining room, and a living room. The third level of the house held a bathroom and three bedrooms. M.H. shared a bedroom with Henthorne's daughter on the third floor of the house, but frequently slept with her mother and Martinez in their bedroom on the bottom floor.

2

Sometime between 7:00 p.m. and 8:00 p.m. on September 26, 2011, Harris went to the third floor of the home to take a shower. When she left her room on the first floor, Martinez and M.H. were watching a movie and throwing a ball back and forth to each other. While Harris was upstairs, Martinez began touching M.H. on her "private spot," both on top of and underneath her clothes. (Tr. p. 65). M.H. tried to pull Martinez' arms away, but he started "going up [her] shirt" and touching M.H. underneath her bra. (Tr. p. 67).

When Harris returned downstairs, M.H. told her about Martinez' actions. Harris observed that M.H. was "nervous and a little teary-eyed." (Tr. p. 33). She told M.H. to stay in the bathroom and then confronted Martinez with M.H.'s allegations. Martinez denied that he had touched M.H., and Harris yelled at him and slapped him two or three times. When M.H. came into the bedroom, Martinez told her to tell "the truth." (Tr. p. 39). M.H. responded "I am telling the truth." (Tr. p. 39). At that point, she was still teary-eyed and hung on to Harris.

Subsequently, Harris told Martinez that he had to leave, but he refused. Henthorne heard the commotion on the first floor and came downstairs to see what was happening. She observed that M.H. seemed scared and that Martinez seemed intoxicated. When she learned of M.H.'s accusations, Henthorne also told Martinez that he had to leave the house. Martinez refused. Henthorne went back upstairs and telephoned the police, but Martinez left before the police arrived.

Indianapolis Metropolitan Police Department Officer William Pang (Officer Pang) responded to the scene and spoke with Harris and M.H. He consulted child abuse Detective Grant Melton (Officer Melton), who instructed Officer Pang to have Harris and M.H. come to his office at the Child Advocacy Center. M.H., Harris, and Henthorne went to the Child Advocacy Center, where a Family Case Manager from the Department of Child Services conducted a forensic interview of M.H. Officer Melton also interviewed Harris and Henthorne. After the interview, Officer Melton sent M.H. to Riley Hospital for an examination.

At Riley Hospital, M.H. met with a sexual assault nurse examiner, Cindy Wathen (Wathen), who interviewed her to find out what M.H. had experienced. M.H. told Wathen that Martinez had touched her breasts and genitalia and had also penetrated her with his finger. Wathen conducted a physical examination of M.H., but did not find any injuries.

M.H. subsequently related to police officers that Martinez had touched her private spot on another occasion before the night of September 26. She said that the incident had occurred in Henthorne's TV room on the bottom floor of the tri-level house, but she had not said anything to Martinez about his actions because she was too nervous.

On September 29, 2009, the State filed an Information charging Martinez with Count I, child molesting, a Class A felony, I.C. § 35-42-4-3; and Counts II-IV, child molesting, Class C felonies, I.C. § 35-42-4-3. After the State filed the charges, Martinez

4

called Harris' stepfather, Thomas Haley (Haley), from jail. During the telephone call, Martinez told Haley to tell Harris that "he loved her and that he was sorry." (Tr. p. 101).

On February 10, 2012, a bench trial was held. At the conclusion of the State's case, the trial court granted Martinez' motion for judgment on the evidence as to Count IV. At the conclusion of the evidence, the trial court found Martinez not guilty of Count I, child molesting as a Class A felony, but guilty of Counts II and III, child molesting, Class C felonies. On February 22, 2012, the trial court held a sentencing hearing and sentenced Martinez to eight years on each Count, with two years suspended and with the sentences to be served concurrently. The trial court also sentenced Martinez to one year of probation.

Martinez now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Admission of Testimony*

Martinez first argues that the trial court committed fundamental error when it admitted certain testimony at trial. Specifically, he maintains that the trial court should have excluded Wathen's testimony that M.H. told her that Martinez had touched her breasts and genitalia and Haley's testimony that Martinez had told him to tell Harris he was "sorry." (Tr. p. 101). We will address each of these arguments separately.

A. *Wathen's Testimony*

When Wathen testified to M.H.'s statements, Martinez objected on hearsay grounds. The trial court, however, allowed the testimony because it determined that

5

M.H.'s statements were made for the purpose of diagnosis or treatment. Martinez now disputes the admission of the testimony on the basis that it did not comply with Ind. Evidence Rule 702(a). Because Martinez did not object to the testimony on Evid. R. 702 grounds at trial, he must show on appeal that its admission was a fundamental error. *See Brown v. State,* 783 N.E.2d 1121, 1125-26 (Ind. 2003) (holding that the failure to make a contemporaneous objection at trial waives any claim on appeal that evidence was improperly admitted).

The fundamental error exception is extremely narrow and applies only where the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mendenhall v. State,* 963 N.E.2d 553, 567 (Ind. Ct. App. 2012), *trans. denied.* The mere fact that error has occurred and that it will prejudice the defendant is not sufficient to invoke the fundamental error exception; rather, the error must be such that we are left with the conviction that the verdict is clearly wrong and of such dubious validity that justice cannot permit it to stand. *Owens v. State,* 937 N.E.2d 880, 885 (Ind. Ct. App. 2010), *trans. denied.*

Pursuant to Evid. R. 702(a), "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." According to Martinez, Wathen's testimony did not "assist the trier of fact" because she did not

discover any physical or scientific evidence indicating that M.H. had been molested and, thus, the results of her examination were inconclusive.

We cannot agree. We have characterized the standard for whether testimony will "assist the trier of fact" as whether the testimony is "relevant to the task at hand." *See F.A.C.E. Trading, Inc. v. Carter,* 821 N.E.2d 38, 44 (Ind. Ct. App. 2005), *trans. denied.* As defined in Evid. R. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In order to prove that Martinez committed child molesting, the State was required to prove that he "perform[ed] or submit[ted] to any fondling or touching, of either [M.H. or himself] . . . ." I.C. § 35-42-4-3(b). Accordingly, both the fact that M.H. received a sexual abuse examination and the results of that examination were relevant to help the trier of fact determine whether Martinez had touched M.H. Although the results were inconclusive, the lack of evidence that Martinez had touched M.H. made it "less probable" that he in fact touched her. *See* Evid. R. 401. Therefore, the inconclusive findings were relevant. *See* Evid. R. 401.

Alternatively, Martinez also contends that the trial court committed fundamental error by admitting Wathen's testimony because (1) she did not describe the methods she used to examine M.H; and (2) she did not explicitly explain why, based on her training and experience, she did not expect to find any evidence of DNA or injury during her examination. Pursuant to Evid. R. 702(b), "[e]xpert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony

7

rests are reliable." Martinez seemingly requests that we evaluate Wathen's testimony under this standard. However, we find that Wathen's testimony was testimony regarding "specialized knowledge," which is governed by Evid. R. 702(a) rather than Evid. R. 702(b). *See Newbill v. State,* 884 N.E.2d 383, 398 (Ind. Ct. App. 2008), *trans. denied* (allowing sexual assault nurse examiner to testify regarding sexual abuse examination due to her specialized knowledge). Under this standard, we do not find merit in Martinez' contentions. *See Lyons v. State,* No. 76A03-1112-CR-582, 2012 WL 4829806, *4 (Ind. Ct. App. Oct. 11, 2012) (stating that if an expert has specialized knowledge meeting the requirements of Evid. R. 702(a), any weaknesses or problems in the expert's testimony go only to the weight of the testimony, not its admissibility). Accordingly, we conclude that the trial court did not commit fundamental error in admitting Wathen's testimony.

### B. *Haley's Testimony*

Next, we will address Martinez' argument that the trial court abused its discretion when it allowed Haley to testify that Martinez told him to tell Harris that "he loved her and [] was sorry." (Tr. p. 101). Martinez' specific argument is that this statement did not have probative value and should not have been admitted.

Evidence is relevant, and therefore has probative value, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. The trial court has the discretion to admit even marginally relevant evidence and will

only exclude that evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. *Sanders v. State,* 724 N.E.2d 1127, 1131 (Ind. Ct. App. 2000). The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission. *Id.*

Martinez' statement has substantial probative value because it could be interpreted as an apology for molesting M.H. and, therefore, an admission of guilt. Thus, it is relevant according to the definition of "relevant evidence" provided by Evid. R. 401. Although Martinez offers us an alternate interpretation of his apology—that he was sorry he and Harris "were both suffering"—we must consider the evidence in the light most favorable to the trial court. (Tr. p. 136); *see id.* While his statement might have had a minimal prejudicial effect, we do not find that its prejudicial effect outweighed its probative value given its substantial probative value. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the testimony.

## II. *Sufficiency*

Finally, Martinez argues that the State did not provide sufficient evidence to prove beyond a reasonable doubt that he committed both Counts of child molesting. In particular, the State did not prove that he touched M.H.'s breasts and genitalia with the intent to "arouse or satisfy sexual desires." *See* I.C. § 35-42-4-3. In reviewing a claim of insufficiency of the evidence on appeal from a bench trial, we neither reweigh the evidence nor assess the credibility of witnesses. *Sargent v. State,* 875 N.E.2d 762, 767

9

(Ind. Ct. App. 2007). We will consider only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom. *Id.* If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then we will affirm the conviction. *Id.*

In order to convict Martinez for child molesting as a Class C felony, the State was required to prove that he, "with a child under fourteen (14) years of age, perform[ed] or submit[ted] to any fondling or touching, of either [M.H. or himself], with intent to arouse or satisfy the sexual desires of either [M.H. or himself]." I.C. § 35-42-4-3. Mere touching alone is not sufficient to constitute the crime of child molesting. *Rodriguez v. State,* 868 N.E.2d 551, 553 (Ind. Ct. App. 2007). The State was also required to prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. *Id.* "The intent to arouse or satisfy the sexual desires of the child or the older person may be established by circumstantial evidence and may be inferred from 'the actor's conduct and the natural and usual sequence to which such conduct usually points.'" *Id.* (quoting *Kanady v. State,* 810 N.E.2d 1068, 1069-70 (Ind. Ct. App. 2004)). Our supreme court has held that intentional touching of the genital area can be circumstantial evidence of intent to arouse or satisfy sexual desires. *Sanchez v. State,* 675 N.E.2d 306, 311 (Ind. 1996).

Here, the State presented sufficient evidence of Martinez' intent to arouse or satisfy his sexual desires with respect to both Counts. In support of Count II, the State

10

presented evidence that on September 26, 2011, Martinez touched M.H. on her "private spot," both on top of and underneath her clothes. (Tr. p. 65). M.H. tried to pull Martinez' arms away, but he started "going up [her] shirt" and touching her underneath her bra. (Tr. p. 67). Later that evening, M.H. told Wathen that Martinez had touched her breasts and genitalia, and that he had penetrated her with his finger. Martinez contends that M.H.'s reference to her "private spot" was too ambiguous to prove that he touched her genital area. However, we have already found that Wathen's testimony was admissible, and her testimony clarified that M.H. was referring to her genitalia when she said "private spot."[1] This is sufficient circumstantial evidence to support a reasonable inference of Martinez' intent to arouse or satisfy his sexual desires. *See id.*

Alternatively, Martinez contends that because the trial court did not find Wathen's testimony sufficient to support Count I, it should not have found it sufficient to support Count II. We will not address this argument as we will not review a judgment on the basis that it is inconsistent. *See Dubinion v. State,* 493 N.E.2d 1245, 1246 (Ind. 1986).

Turning to Count III, M.H. testified that on an unidentified date, she was standing in the TV room when Martinez touched her on her "private spot" on top of her clothes and made her feel "uncomfortable."[2] (Tr. p. 60). We can infer from the "natural and

---

[1] We also reject Martinez' argument that the State did not prove that he touched M.H. underneath her bra in front rather than in back as we have previously held that "touching a child's breasts or genitals is not required to sustain a child molesting conviction." *Bass v. State,* 947 N.E.2d 456, 460 (Ind. Ct. App. 2011). Therefore, it is immaterial whether Martinez touched M.H.'s back or chest as long as the touching was done with the intent to arouse or satisfy his sexual desires.

[2] We do not find merit in Martinez' argument that the State was required to prove that the offense occurred between August 11, 2011 and September 26, 2011, as alleged in the charging Information. As

11

usual sequence" of touching a person's "private spot" that Martinez acted with the intent to arouse or satisfy his sexual desires. *See Rodriguez,* 868 N.E.2d at 553. We conclude that this inference was reasonable and provided sufficient circumstantial evidence of his intent to support his conviction on Count III.

In sum, we find that the State presented sufficient evidence to support his convictions on both Counts beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not commit fundamental error in admitting testimony; and (2) the State presented sufficient evidence to prove beyond a reasonable doubt that Martinez committed two Counts of child molesting.

Affirmed.

BAILEY, J. and CRONE, J. concur

---

the State correctly notes, "[i]n child molestation cases, the exact date is only important in limited circumstances, such as where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Love v. State,* 761 N.E.2d 806, 809 (Ind. 2002). M.H. was only twelve years old at the time of the offense, and was thus well below the fourteen-year-old dividing line for child molesting. *See* I.C. § 35-42-4-3.