**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMAR PERKINS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1306-CR-551 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
Cause No. 49G02-1106-MR-42118

**December 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Jamar Lee Perkins appeals his conviction for felony murder following a jury trial. Perkins presents a single issue for our review, namely, whether the trial court abused its discretion when it admitted evidence of Perkins' prior bad acts.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Late on June 4 and early on June 5, 2011, Perkins, Anthony Shockley, and Johnathan Williams were traveling in Indianapolis in a white Trailblazer driven by Shockley. At one point, the three men were sitting in the vehicle in a gas station parking lot when they discussed committing a robbery. Perkins was carrying a .380 caliber handgun, and Shockley was carrying a .22 caliber rifle. Williams was unarmed. The three men then drove to 5776 Brendon Way East Drive, where Shockley fired his rifle multiple times, and Perkins fired his handgun once.[1] Then the three men proceeded to the Bavarian Village apartment complex. Williams intended to sell a cell phone to someone who was present in one of the apartments there. After Williams parked his vehicle, he heard Perkins say, "Let's get him," referring to a man later identified as Clayton Battice, exiting a truck parked nearby. Transcript at 203.

Williams exited the vehicle and, as he entered one of the apartment buildings, he heard gunfire. Williams went back outside and saw Shockley, still armed with the .22 caliber rifle, fire two or three shots at Battice. Williams saw Perkins, holding the .380

---

[1] No evidence was presented to explain whether they were firing at someone or engaged in any particular activity at the time.

2

caliber handgun and standing next to Shockley. Williams and Perkins then ran back to the vehicle and drove off, and Shockley left the scene on foot. Williams and Perkins picked up Shockley before they left the apartment complex. Battice died of his gunshot wounds.

Later in the morning of June 5, police stopped Williams, who was alone in his white Trailblazer at the time. Police had analyzed surveillance video from the apartment complex and identified Williams' vehicle as the one seen entering the complex early that morning before the shooting. Williams ultimately agreed to talk to the police in exchange for a promise that he face only a charge of "assisting a criminal." Id. at 351. Williams told police that Shockley and Perkins were involved in the shooting.

Police obtained a search warrant for Perkins' apartment, which they executed on June 9. There, officers found a .380 caliber handgun with one live round in the chamber and eight live rounds in the magazine. And officers found a .22 caliber rifle in a dumpster located near Shockley's grandmother's apartment, a place Shockley regularly visited. Officers determined that the .22 caliber rifle matched a fired casing and a spent bullet at the scene of the Battice shooting, as well as three bullets removed from Battice's body. The rifle also matched fired casings that had been recovered from the scene of the shots fired at 5776 Brendon Way East Drive in the early morning of June 5. And officers found a .380 caliber fired casing at that location that matched the handgun recovered from Perkins' apartment.

The State charged both Perkins and Shockley with Battice's murder, but they were tried separately. Shockley was tried first and was convicted of murder and attempted

3

robbery. A jury found Perkins guilty as charged of felony murder and attempted robbery, as a Class A felony. The trial court entered judgment on felony murder, only, and sentenced Perkins to fifty-five years executed. This appeal ensued.

## DISCUSSION AND DECISION

Perkins contends that the trial court abused its discretion when it admitted evidence at his trial regarding prior bad acts in violation of Evidence Rule 404(b). The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. Willingham v. State, 794 N.E.2d 1110, 1116 (Ind. Ct. App. 2003). A trial court's decision to admit evidence will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial. Id.

Evidence Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." In assessing admissibility of 404(b) evidence the court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. Fry v. State, 748 N.E.2d 369, 372 (Ind. 2001) (citation omitted). The relevance and balancing issues are reviewed for an abuse of discretion. Id. (citation omitted).

Perkins first contends that the trial court abused its discretion when it admitted, over his objection, Williams' testimony that he, Perkins, and Shockley had talked about committing a robbery during the hours prior to the Battice shooting. In particular, Perkins maintains that that evidence was not relevant because he did not make a claim of a particular contrary intent, his identity was not at issue, and it was not necessary to complete the story of the charged offense. We cannot agree.

As our supreme court explained in Wickizer v. State, 626 N.E.2d 795, 797-99 (Ind. 1993),

> The intent exception in Evid. R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense. The trial court must then determine whether to admit or exclude such evidence depending upon whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

Here, again, Perkins maintains that he did not make a claim of a particular contrary intent. Instead, "he simply argued that, although he went to Bavarian Village with Shockley and Williams, he did not have the intent to commit robbery and he did not participate in the robbery attempt. Perkins did not admit to commission of the act while professing a contrary intent." Appellant's Brief at 13.

The State contends, however, that this testimony does not fall under Rule 404(b) because it is not evidence of a prior bad act but evidence "intrinsic to the charged crime

5

of attempted robbery and felony murder." Appellee's Brief at 15. Our supreme court has explained that "[t]he paradigm [for inadmissible evidence of a prior bad act] is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." Swanson v. State, 666 N.E.2d 397, 398 (Ind. 1996). Evidence of uncharged misconduct which is probative of the defendant's motive and which is "inextricably bound up" with the charged crime is properly admissible under Rule 404. Sanders v. State, 724 N.E.2d 1127, 1131 (Ind. Ct. App. 2000). Here, Williams testified that he, Perkins, and Shockley discussed committing a robbery just hours before the attempted robbery and murder of Battice. Thus, it was not evidence of an unrelated bad act occurring at another time offered only to create the inference that Perkins is a man of bad character. See id. Instead, this evidence was highly probative of Perkins' motive and was "inextricably bound up" with the charged offense.[2] See id. The trial court did not abuse its discretion when it permitted this challenged testimony.

Next, Perkins contends that the trial court abused its discretion when it admitted evidence that he had fired his handgun at the Brendon Way East location "approximately an hour and a half" before the Battice shooting. Appellant's Brief at 12. He alleges that this evidence was "not admissible to prove any fact in issue." Id. Perkins acknowledges

---

[2] Perkins maintains that the evidence of the robbery discussion was not inextricably bound up with the charged offense because Williams testified that "the only reason" they went to the apartment complex was to sell a cell phone. Transcript at 250. In other words, he maintains that there was no plan to commit a robbery at the apartment complex. But Williams' stated understanding of what would happen at the apartment complex is not dispositive of Perkins' and Shockley's intentions, and the evidence shows that Perkins' intent as soon as they parked at the apartment complex was to commit a robbery.

that the jury "was not explicitly told that the shooting at Brendon Way East occurred pursuant to any illegal activity." Id. But "they were told that it occurred shortly after the conversation about committing a robbery." Id. Thus, Perkins maintains that the "jurors most likely inferred that the shooting at Brendon Way East occurred during a robbery or an attempted robbery." Id.

First, as the State points out, the trial court gave a limiting instruction at the time that the evidence was presented to the jury and again during the final instructions. In particular, the trial court instructed the jurors in relevant part that the evidence of the shooting at the Brendon Way East location was "not being offered and should not be considered as evidence that [Perkins] is a bad person or a criminal." Transcript at 198. When limiting instructions are given that certain evidence be considered for only a particular purpose, the law will presume that the jury will follow the court's admonitions. Hernandez v. State, 785 N.E.2d 294, 303 (Ind. Ct. App. 2003), trans. denied.

Second, the evidence of the Brendon Way East shooting was not unrelated to the charged crime, but was relevant to show that Perkins had used the .380 caliber handgun earlier on the night of the Battice shooting, when he was alleged to have brandished the same handgun while standing next to Shockley, who fired the fatal shots. And Perkins has not demonstrated that any prejudice that may have resulted from this evidence outweighed the probative value. The trial court did not abuse its discretion when it permitted Williams' testimony regarding the shooting at the Brendon Way East residence.

Affirmed.

BAKER, J., and CRONE, J., concur.