Robert WILLINGHAM, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0211–CR–455.

Court of Appeals of Indiana.

Aug. 29, 2003.

John D. Clouse, Ivan A. Arnaez, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Robert Willingham (Willingham), appeals his convictions for Count I, dealing cocaine, a Class A felony, Ind.Code § 35–48–4–1(a)(2); Count III, possession of a controlled substance, a Class D felony, I.C. § 35–48–4–7(a); and Count IV, possession of marijuana, a Class A misdemeanor, I.C. § 35–48–4–11(1).

Affirmed.

*ISSUES*

Willingham raises six issues on appeal, which we consolidate and restate as follows:

1. Whether the trial court erred in denying his Motion to Suppress Evidence;

2. Whether the trial court violated a Motion in Limine by allowing testimony of uncharged misconduct regarding his sale of cocaine during the week prior to his arrest;

3. Whether evidence regarding the weight of the cocaine confiscated by police during the search of his residence was properly admitted by the trial court; and

4. Whether comments made by the prosecutor in the presence of the jury during closing argument amount to prosecutorial misconduct.

## FACTS AND PROCEDURAL HISTORY

On May 14, 2002, Vanderburgh County Sheriff detectives executed a search warrant at Willingham's residence located at 216 South Kerth in Evansville, Indiana. Willingham was arrested as a result of the search, after the detectives found cocaine, marijuana, pills, scales and money in Willingham's bedroom. On May 17, 2002, the State filed an information charging Willingham with Count I, dealing in cocaine, a Class A felony, I.C. § 35–48–4–1(a)(2); Count II, possession of a controlled substance, a Class D felony, I.C. § 35–48–4–7(a); Count III, possession of a controlled substance, a Class D felony, I.C. § 35–48–4–7(a); and Count IV, possession of marijuana, a Class A misdemeanor, I.C. § 35–48–4–11(1).

On September 27, 2002, the trial court conducted a hearing on Willingham's Motion to Suppress. The motion was subsequently denied. A jury trial was held on October 7–8, 2002. The jury returned guilty verdicts on Counts I, III, and IV. The trial court granted Willingham's motion for a directed verdict as to Count II.

On November 6, 2002, the trial court sentenced Willingham to the Department of Correction for a period of twenty years on Count I, eighteen months on Count III, and one year on Count IV. The trial court ordered the sentences on Counts III and IV to run concurrently to that of Count I.

Willingham now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Motion to Suppress

■ Our review of a trial court's denial of a motion to suppress is similar to other sufficiency matters. *Crabtree v. State*, 762 N.E.2d 217, 219 (Ind.Ct.App. 2002). In reviewing the trial court's decision, we consider the evidence most favorable to the trial court's ruling and any uncontradicted substantial evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Id.* If the evidence is conflicting, we consider only the evidence favorable to the ruling and will affirm the trial court's decision if it is supported by substantial evidence of probative value. *Id.*

Willingham contends that the trial court erred by denying his Motion to Suppress Evidence. Specifically, Willingham argues that his rights under the Fourth Amendment to the United States Constitution and Article I, section 11 of the Indiana Constitution were violated when the Vanderburgh County Sheriff's detectives failed to comply with the "knock and announce" rule in executing their warrant to search his home. Conversely, the State argues that the detectives complied with the "knock and announce" rule, in that they waited for fifteen to twenty seconds to enter Willingham's residence after knocking and announcing their presence. Despite the detectives' compliance, the State contends that, because the warrant was specific to locating drugs in Willingham's residence, and because drugs may be easi-

ly destroyed, exigent circumstances existed that would permit the detectives to enter Willingham's home more quickly.

The Fourth Amendment to the U.S. Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The U.S. Supreme Court has determined that "an announcement of authority requirement is embodied in the Fourth Amendment as it applies to the states." *State v. Dusch*, 259 Ind. 507, 510, 289 N.E.2d 515, 516 (Ind.1972).

Article I, section 11 of the Indiana Constitution tracks the Fourth Amendment language nearly *verbatim*.[1] Moreover, the "knock and announce" requirement set forth in case law from both the U.S. Supreme Court and our state courts is likewise embodied in Indiana Code as follows: "A law enforcement officer may break open any outer or inner door or window in order to execute a search warrant, if he is not admitted following an announcement of his authority and purpose." I.C. § 35–33–5–7(d).

 Therefore, under both the Fourth Amendment to the U.S. Constitution and Article I, section 11 of the Indiana Constitution, there exists a requirement that police knock and announce their authority before conducting a search of a dwelling. *Dusch*, 259 Ind. at 512, 289

N.E.2d at 517. Further, once the police comply with the "knock and announce" rule, they must give the inhabitants a reasonable opportunity to respond. *Id.*, 259 Ind. at 514, 289 N.E.2d at 518. Nevertheless, this requirement need not be adhered to blindly regardless of the particular circumstances encountered by authorities at the time the search is to be conducted. *Id.*, 259 Ind. at 512, 289 N.E.2d at 517. Instead, the particular facts of each case must be considered in determining whether exigent circumstances exist which would permit deviation from the standard "knock and announce" requirement. *See id.*, 259 Ind. at 512–13, 289 N.E.2d at 517–18.

At the hearing on the Motion to Suppress, Willingham testified that he was at home, sitting on his sofa, watching television around 5:30 p.m. on May 14, 2002, when he heard three loud knocks on his door and a voice say, "Sheriff's Department, search warrant." (Transcript p. 36). Then, Willingham heard three additional knocks on the door and "Sheriff's Department, search warrant," again immediately before the detectives forced his door open. *Id.* Willingham testified that the whole episode occurred in a matter of three or four seconds, and that he had risen from the sofa and was approximately halfway to the door when it was forced open by the detectives.

To the contrary, Detective Daza testified during the hearing on the Motion to Suppress that approximately 15 to 20 seconds elapsed from the time the detectives first knocked on Willingham's door and announced their authority and when the detectives actually made entry. The trial court questioned Detective Daza regarding

---

1. Art. I, s. 11 of the Indiana Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

the existence of a standard operating procedure concerning how long the detectives generally wait after they knock and announce their authority. Detective Daza responded:

> Well, it wasn't a no-knock warrant, so we are aware that we have to wait. We are also aware of a federal court decision in which Judge Young held that seven seconds was too short. So, we wait at least that long and generally, longer. We also had served a search warrant at [Willingham's] residence before, both myself and Detective Smith. So, we are cognizant of the size of the house and how long or how short it would take someone to enter the door, or to come to the door. So, I feel confident that we gave him more than adequate time to answer.

(Tr. p. 42).

In addition, Detective Daza testified that one of the detectives present was still learning to use "the ram" to gain entry into a residence. Detective Daza explained that this detective was therefore "a little bit slower as far as gaining entry." (Tr. p. 42). Further, Detective Daza told the trial court that the detectives knew that Willingham had a large rottweiler dog. Detective Daza testified that, in executing the search warrant, the detectives were mindful of the fact, "[i]t would work out better for us if he were to open the door and have the dog under control, than us have to rush in and possibly get bit." (Tr. p. 43).

The testimony of Willingham and Detective Daza conflicts as to the length of time the detectives waited to enter Willingham's residence after knocking and announcing their authority. However, Detective Daza's testimony provides a sufficient evidentiary basis for the trial court to have determined that the detectives waited at least 7 seconds, and possibly as long as 15 to 20 seconds, before forcing entry to Willingham's residence. Therefore, we conclude that the trial court's denial of the motion to suppress is supported by substantial evidence of probative value. *See Crabtree*, 762 N.E.2d at 219. For that reason, we find no violation of Willingham's rights under the Fourth Amendment to the U.S. Constitution or Article I, section 11 of the Indiana Constitution. *See Dusch*, 259 Ind. at 512, 289 N.E.2d at 517–18.

## II. *404(b) Evidence*

■ Next, Willingham contends that the trial court violated his Motion in Limine by allowing into evidence testimony of uncharged misconduct regarding Willingham's sale of cocaine during the week prior to his arrest. Specifically, Willingham asserts that the testimony was an attempt by the State to bring to the jury's attention an instance of uncharged misconduct in violation of Indiana Evidence Rule 404(b).

Willingham filed his Motion in Limine Barring Evidence of Defendant's "Other Crimes, Wrongs, or Acts" (Motion in Limine), pursuant to Evid. R. 404(b) prior to his trial on October 7, 2002. The motion was granted without objection from the State that same day. At trial, during direct examination by the State, Detective Ethan Smith (Detective Smith) testified that, subsequent to the detectives executing the search warrant at Willingham's residence, Willingham advised Detective Smith that he sold approximately a quarter ounce of cocaine the week before for approximately four hundred dollars. Willingham argues that the testimony was subject to his Motion in Limine because it pertained to prior bad acts he allegedly committed. In addition, Willingham maintains that the testimony is so prejudicial that the trial court erred in refusing to grant a mistrial. We disagree.

 First, the purpose of a motion in limine is to prevent the exposure of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility. *Herrera v. State,* 710 N.E.2d 931, 935 (Ind.Ct.App.1999). The trial court's ruling on a motion in limine is not a determination of the ultimate admissibility of the evidence. *Id.* at 936. If the trial court commits error in admitting evidence that the defendant sought to be excluded by a motion in limine, the error lies in the admission of evidence at trial, not in a violation of the trial court's pretrial ruling. *Id.* Therefore, even where the trial court grants a pretrial motion in limine to exclude evidence of unrelated criminal activity, the trial court does not abuse its discretion in ultimately admitting that same evidence when the evidence is properly admissible. *Id.*

 The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Herrera v. State,* 710 N.E.2d at 935. A trial court's decision to admit evidence will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Id.*

 Evidence Rule 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Thus, evidence is excluded under Evid. R. 404(b) only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Herrera,* 710 N.E.2d at 935. Evidence of uncharged misconduct which is probative of the defendant's motive and which is "inextricably bound up" with the charged crime is properly admissible under Evid. R. 404(b). *Id.; Sanders v. State,* 724 N.E.2d 1127, 1131 (Ind.Ct. App.2000).

 A consideration of the admissibility of evidence under Evid. R. 404(b) necessarily includes the relevancy test of Evid. R. 401 and the balancing test of Evid. R. 403. *Sanders,* 724 N.E.2d at 1131. Pursuant to Evid. R. 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See id.* Nevertheless, under Evid. R. 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Id.* The trial court has wide latitude in weighing the probative value of evidence against the potentially prejudicial effects of its admission. *Id.* The determination reached by the trial court as a result of the Evid. R. 403 balancing test is reviewed for an abuse of discretion by this court. *Id.*

Contrary to Willingham's argument, the State argues that the evidence is probative of Willingham's motive and inextricably bound up with the charged crime. Specifically, the State contends that evidence of Willingham's admission to selling cocaine the week prior to his arrest for dealing in cocaine is probative of Willingham's motive to sell the cocaine he possessed and is, therefore, inextricably bound up with the crime charged. We agree with the State.

Evidence of Willingham's admission to selling cocaine for four hundred dollars the week before he was arrested and charged

with dealing in cocaine is probative of Willingham's motive to sell the cocaine that the detectives found in his bedroom. As a result, the evidence is "inextricably bound up" with the charged crime of dealing in cocaine. *Sanders,* 724 N.E.2d at 1131. Moreover, in applying the balancing test of Evid. R. 403, we find that the prejudicial nature of the evidence does not substantially outweigh its probative value. In other words, the evidence is only prejudicial in that it is highly probative of Willingham's perpetration of the charged offense. Thus, the evidence admitted does not rise to the level of *unfairly* prejudicial. *Id.* In the language of 404(b), it is not evidence of "other" wrongs, but of the charged offense. *See id.* As the trial court stated in overruling Willingham's objection to the testimony:

> [Willingham] is charged with possession with intent to deliver cocaine and that's what the evidence goes to. The [c]ourt appreciates the defendant's argument that the defendant stated that he dealt a quarter-ounce a week before and that's a separate act, but it seems to the [c]ourt to be a sequence of events. Plus, the [c]ourt finds that it's also admissible under Rule 404 where such evidence is admissible to prove intent.

(Tr. p. 88). Consequently, because we do not find the evidence to be unfairly prejudicial to Willingham, we find no abuse of discretion in the trial court's admission of the evidence. *Herrera v. State,* 710 N.E.2d at 935.

### III. *Weight of Cocaine*

Next, Willingham argues that the State failed to show that the scale used to weigh the cocaine was properly calibrated as required by law. Willingham's argument is wholly without merit.

Upon executing the search warrant, the detectives discovered approximately 109.25 grams of a white, powdery substance that later tested positive for the presence of cocaine. Willingham was charged with dealing in cocaine, as a Class A felony, pursuant to Ind.Code § 35-48-4-1(b)(1) that states in pertinent part: "The offense is a Class A felony if the amount of the drug involved weighs three (3) grams or more."

At trial, the State has the burden of proving that scales used by the forensic chemist to establish the weight of the alleged cocaine must be calibrated before and after their use. *Robinson v. State,* 634 N.E.2d 1367, 1374 (Ind.Ct.App. 1994). The question of accuracy is ultimately a question for the trier-of-fact. *Id.* In *Robinson v. State,* the forensic chemist testified that he weighed the cocaine with scales that were calibrated annually by an outside vendor. The forensic chemist further testified that the scales were calibrated on November 15, 1989, and September 11, 1990, both before and after he weighed the subject cocaine on January 26, 1990. The *Robinson* court held that this evidence was sufficient to indicate the accuracy of the scales used to weigh the cocaine.

In the instant case, forensic chemist for the Indiana State Police, Rebecca Nickless (Nickless), first testified that she calibrated the balance scales at the beginning of every month, in addition to being calibrated once annually by an outside vendor. Subsequent to objection by defense counsel and discussion between the trial court and trial counsel, Nickless clarified her testimony as follows:

> I really wasn't able to give a complete answer. In our guidelines now, we have to calibrate every [time] before we start opening evidence, and that means[,] if I open evidence in the morning, I have to calibrate that balance. If another analyst opens evidence that afternoon and uses the exact same balance, he has to

calibrate it, also. So, before I sit down to open evidence, I have to show that those balances were working properly. (Tr. p. 150). The trial court then took defense counsel's objection under advisement until the trial resumed the following morning.

The following morning, the State's direct examination of Nickless resumed as follows:

STATE: Ms. Nickless, we were talking about State's Exhibit 5. Just for my recollection, when did you first test State's Exhibit 5?

NICKLESS: I opened State's Exhibit 5 on August the 6th.

STATE: And we were talking about the weight of State's Exhibit 5. Was that weighed on that particular day as well?

NICKLESS: Yes, it was.

STATE: Now, prior to August 6th, when had the scales that you used to weigh State's Exhibit 5, when had they last been certified?

NICKLESS: They were calibrated on August 1st.

STATE: Now, after you tested State's Exhibit 5, when were the scales next calibrated?

NICKLESS: September 3rd.

STATE: Now, beyond those calibrations, did you personally calibrate the scales on the day you tested those?

NICKLESS: Yes, I did.

STATE: And were the scales in good working order on the day you tested them?

NICKLESS: Yes, they were.

STATE: Now, what were your ... did you develop an opinion as to how much State's Exhibit 5 weighed?

NICKLESS: Yes, I did.

STATE: And what is that opinion?

NICKLESS: It weighed 109.25 grams. (Tr. pp. 155–56).

Based upon this court's holding in *Robinson*, we find that the State presented sufficient evidence through the testimony of Nickless to meet their burden of proving that the scales used to weigh the cocaine in this trial were calibrated both before and after weighing the subject cocaine.[2] *See Robinson*, 634 N.E.2d at 1374.

IV. *Prosecutorial Misconduct*

██ Finally, Willingham argues that the trial court erred when it refused to grant his motion for mistrial as a result of the prosecutor's comments during closing argument. Specifically, Willingham contends that the prosecutor improperly referred to the fact that he did not testify at trial. Willingham argues that comments made by the prosecutor in the presence of the jury during closing argument should have resulted in a mistrial. We disagree.

During closing argument, defense counsel focused in large part on conflicting inferences that could be drawn from the testimony of Detective Daza and forensic chemist Nickless. Defense counsel then directed the jury's attention to a portion of the trial court's final instruction number 14 (Instruction 14) and argued as follows:

Fourteen tells you if the evidence in this case is susceptible to two different interpretations, the law adopts the interpretation that will establish the defendant's innocence and reject that which points towards his guilt.

(Tr. p. 203).

On rebuttal argument, the State read through Instruction 14 in its entirety. The prosecutor placed emphasis on the second paragraph, which was omitted by defense counsel in his argument, and which provides as follows:

**2.** Thus, the trial court properly denied Willingham's motion for a directed verdict on count I.

You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable.

(Tr. p. 207). After quoting this second paragraph, the prosecutor stated: "That being said, I'd submit to you as the jurors, what other reasonable conclusion have you heard throughout the testimony?" (Tr. p. 207). Defense counsel objected to this statement on the basis that it improperly commented on Willingham's failure to testify. The trial court overruled the objection and denied Willingham's motion for mistrial.

■■■■■ "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from the defendant's silence." *Moore v. State,* 669 N.E.2d 733, 739 (Ind.1996). However, "[t]he Indiana Supreme Court has indicated that if in its totality the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal." *Channell v. State,* 658 N.E.2d 925, 932 (Ind.Ct.App.1995), *trans. denied.* Therefore, comment on the lack of evidence by the defense concerning otherwise incriminating evidence against him is proper "as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the defendant's failure to testify." *Martinez v. State,* 549 N.E.2d 1026, 1028 (Ind.1990).

During a discussion conducted outside of the jury's presence subsequent to defense counsel's objection, the prosecutor explained that his remarks addressed defense counsel's argument that there were two reasonable inferences to be drawn from the testimony, when the prosecutor felt there was only one inference that was reasonable. Based upon the context of the comment, we find that the comment clearly addresses the testimony to which defense counsel referred, as opposed to Willingham's failure to testify.[3] Therefore, we hold that the prosecutor's comments do not violate Willingham's right against self-incrimination under the Fifth Amendment and, thus, do not constitute prosecutorial misconduct. Accordingly, the trial court did not err in denying Willingham's request for a mistrial.

## CONCLUSION

Based on the foregoing, we conclude that: (1) the trial court properly denied Willingham's Motion to Suppress; (2) the trial court did not err by allowing testimony regarding Willingham's sale of cocaine during the week prior to his arrest in this case; (3) testimony concerning the weight of the cocaine forming the basis of Count I was properly admitted into evidence; and (4) comments made by the prosecutor in closing argument did not constitute prosecutorial misconduct.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.

---

**3.** Moreover, we note that the "conflicting" testimony here at issue was elicited from Detective Daza and Nickless who were both State witnesses. Thus, Willingham's assertion that the prosecutor's comments had any implication as to Willingham's failure to testify is already a tenuous construction of the concept of "opposing conclusions," as set forth in Instruction 14.