Roy BENNETT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–0705–CR–240.

Court of Appeals of Indiana.

April 9, 2008.

Transfer Denied May 29, 2008.

Daniel J. Moore, Lafayette, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant Roy Bennett ("Bennett") appeals from his conviction after a jury trial of two counts of Class D felony child exploitation, and three counts of Class C felony child molestation. We affirm Bennett's conviction and use our authority to correct Bennett's sentence to a term of twenty-four years.

The evidence at trial established that P.B., who was born in December of 1991, was the daughter of Rona Bennett ("Rona"). Bennett became Rona's third husband when they married in 1996. Bennett adopted P.B. after marrying Rona. On April 2, 2003, P.B. told her mother that Bennett had been sexually molesting her for three years. The police were called and conducted an investigation into P.B.'s allegations. Rona and Bennett consented to a search of their residence, which was a building where Bennett worked and the family lived. During the search, the police located a vibrator and computer discs containing pornographic movies. P.B. was examined by medical personnel at a hospital where it was determined that P.B. had injuries consistent with being molested.

P.B. later recanted her story of molestation in order to improve her home life. Consequently, the prosecutor's office did not pursue charges based on the molestation allegations. P.B. later renewed her allegations and the prosecutor's office prosecuted the instant action. Bennett left for Mississippi where he was found and returned to Indiana for trial.

First, Bennett argues that the trial court erred by allowing evidence of Bennett's failure to appear for trial, the investigation to locate Bennett, and the ultimate discovery of Bennett's whereabouts in Mississippi living under an assumed identity. Bennett filed a motion in limine requesting that the above evidence be excluded from use at trial. First, Bennett argued that the time lapse between the commission of the charged crimes and Bennett's flight was significant enough to render it inadmissible for the purpose of establishing consciousness of guilt. Second, Bennett argued that evidence of his flight and assumed identity constituted "other crimes, wrongs, or acts." Bennett argued that the evidence was inadmissible because the State had not given notice of an intention to use that evidence pursuant to Ind. Evidence Rule 404(b).

A trial court has broad discretion in ruling on the admissibility of evidence. *Fentress v. State*, 863 N.E.2d 420, 422–23 (Ind.Ct.App.2007). Accordingly, a court on review will reverse a trial court's ruling on the admissibility of evidence only when the trial court abuses its discretion. *Id.* at 423. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and cir-

cumstances. *Vandivier v. State*, 822 N.E.2d 1047, 1052–53 (Ind.Ct.App.2005), *trans. denied.* When reviewing a trial court's decision under an abuse of discretion standard, this court will affirm if there is any evidence supporting the trial court's decision. *Id.* at 1053.

▆ Bennett argues that the challenged evidence should have been excluded because his flight to Mississippi occurred eighteen months after charges originally had been filed against him. He argues that his flight to Mississippi was neither a flight from the scene of the crime nor an attempt to avoid prosecution. Bennett claims that case law requires that for evidence of flight to be admissible, the flight must be immediately from the scene of the crime or used to avoid immediate apprehension. He cites *Dill v. State*, 741 N.E.2d 1230 (Ind.2001) to support this argument.

▆ The main holding in *Dill* is that a separate instruction pertaining to flight should not be given in large part because it unnecessarily emphasizes one particular evidentiary fact, witness, or phase of the case, and has a significant potential to mislead. 741 N.E.2d at 1232. The supreme court, in *Dill,* reiterated the holding that flight and related conduct may be considered by a jury in determining a defendant's guilt. *Id.* This court does not read *Dill* as holding that flight must occur shortly after the commission of a crime or to avoid prosecution in order to be admissible.

The jury was allowed to hear testimony from Eric Johnson of the Mississippi Bureau of Investigation. Johnson testified that he learned about Bennett from a school security officer who was concerned about a new employee hired to work in the computer department at a school in Mississippi. Bennett was hired using the name "Bryan Dragoe." Bennett/Dragoe volunteered to help coach the baseball team claiming that he had played for the University of Miami. The school security officer, who was a sports fan, checked with people at the University of Miami, who indicated that the university had no record of a player by the name "Bryan Dragoe." The school security officer then attempted to fulfill the school's requirement of fingerprints from new employees for the purpose of background checks. The day after the school security officer requested that Bennett/Dragoe provide fingerprints, Bennett/Dragoe came to school with bandages on his fingers, claiming that he had burned his fingertips cooking the previous night. Johnson testified that he encountered Bennett/Dragoe on July 24, 2006, and asked him for identification. Bennett produced a false license, in addition to other forms of identification, bearing the name "Bryan Dragoe," "Bryan L. Dragoe," and "Bryan Lee Dragoe." Johnson confronted Bennett/Dragoe with the fact that Johnson knew the Dragoe driver's license was false. Bennett/Dragoe then told Johnson that his name was "Bryan Lee Denham," that he had taken about $60,000.00 from some drug dealers, and was trying to avoid a confrontation with those drug dealers. Ultimately, after searching for information about "Bryan Lee Denham," the police fingerprinted "Dragoe/Denham" and discovered that he was in fact Bennett, the defendant here.

Bennett testified at trial that his mother paid the $50,000.00 bond in the instant action. The charges at issue here relating to the offenses committed against P.B. were filed on January 12, 2004. Bennett left for Mississippi on October 15, 2004, and his trial was scheduled to begin on October 21, 2004. Bennett presented testimony that he left for Mississippi because he had received hateful, threatening phone calls from Rona's family and that his vehi-

cle had been vandalized. Bennett also testified he introduced himself as "Bryan Dragoe" to a female friend from Mississippi who attended his trial. Bennett admitted that he had assumed a false identity in Mississippi.

■ The evidence of Bennett's flight to Mississippi and assumption of a false identity was relevant evidence in the case at bar. Although Bennett argues that the evidence should have been excluded because of remoteness in time, the evidence established that Bennett fled to Mississippi on October 15, 2004 while facing a trial date of October 21, 2004 on the instant charges. If Bennett fled to Mississippi to conceal himself from those who were allegedly bothering him, as he claimed at trial, then he should have contacted authorities with his whereabouts. The evidence of Bennett's flight and assumption of false identity are indicative of a guilty mind and were properly before the jury. The giving of a false name is a form of flight and thus evidence of consciousness of guilt. *See Serano v. State*, 555 N.E.2d 487, 494 (Ind. Ct.App.1990); *Rogers v. State*, 262 Ind. 315, 315 N.E.2d 707, 712 (1974).

■ Furthermore, Bennett argues that the evidence of his failure to appear, flight to Mississippi, and the assumption of a false identity are evidence of crimes. Bennett argues that the State was required to give notice in compliance with Ind. Evidence Rule 404(b) before being allowed to introduce that evidence at trial, and that the State failed to do so.

Evid. Rule 404(b) states as follows:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The trial court stated as follows about Bennett's Evid. Rule 404(b) argument:

In terms of the 404(B) argument where the State did not give adequate notice, that argument of their intent to use this evidence, I'm gonna rule in favor of the State on that in terms of 401 and 403, I believe. And as I go through the balancing, I don't think the lack of notice, at any rate, is, is unfair or unreasonable. And I don't believe if they had disclosed this information that, uh, it would have aided this case by resolving some issues ahead of time and otherwise promote the efficiency of the, of the trial. That, that is the way I'm inclined to rule. Tr. at 476–477.

■ The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Willingham v. State*, 794 N.E.2d 1110, 1119 (Ind.Ct. App.2003). A trial court's decision to admit evidence will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Id.* Thus, evidence is excluded under Evid. R. 404(b) only when it is introduced to prove the forbidden inference of demonstrating the defendant's propensity to commit the charged crime. *Id.* In other words, the type of evidence to be excluded pursuant to 404(b) is evidence whose only apparent purpose is to prove the defendant is a person who commits crimes. *See Sanders v. State*, 724 N.E.2d 1127, 1131 (Ind.Ct.App.2000).

■ An analysis of admissibility under Rule 404(b) necessarily incorporates the relevancy test of Rule 401 and the balancing test of Rule 403. *Id.* Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.* Only where the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence will that evidence be excluded. Ind. Evidence Rule 403. The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission. *Sanders,* 724 N.E.2d at 1131. We review the trial court's balancing decision under Rule 403 for an abuse of discretion. *Id.*

Here, the evidence is prejudicial only in the sense that it is highly probative of Bennett's perpetration of the charged offenses. The evidence was offered, as stated, as evidence of consciousness of guilt. This evidence is not unfairly prejudicial in that it is not evidence of other wrongs, but of the charged offenses. Furthermore, as discussed above, during Bennett's testimony he was given the opportunity to place before the jury his explanation for fleeing the jurisdiction, fear of harm based upon threats he claimed to have received. The jury was free to choose which witnesses to believe and disbelieve. Bennett's argument in this regard fails.

■ Bennett argues that his three convictions for Class C felony child molestation, charged as Counts V, VI, and XIX, violate the double jeopardy provisions of the Indiana constitution, more specifically, Article 1, § 14 of the Indiana constitution.

■ Indiana's constitution provides that no person shall be put in jeopardy twice for the same offense. Article I, § 14. Our supreme court, in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), stated that a two part test would be used to determine if a violation of the prohibition against double jeopardy had occurred. Under the test relevant to the argument in the case at bar, a court on review analyzes whether there was a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.* at 53. The purpose of this test is to insure that multiple guilty verdicts are not based on the same evidentiary facts. *Id.* n. 46. The defendant bears the burden of establishing that the violation has occurred. *Id.* at 53.

Bennett contends that the only difference in the three counts is the time frame alleged. Bennett claims that P.B., in her testimony at trial, described only three specific incidents of fondling in addition to general allegations of daily abuse. First, Bennett acknowledges that P.B. specifically testified about an incident of molestation occurring on the morning of April 2, 2003. That allegation was charged as Count XIX, and the jury convicted Bennett of that crime. Bennett acknowledges that another instance of molestation testified to by P.B. was her allegation that Bennett had first molested her after the family had relocated to Indiana in 2000. Those evidentiary facts satisfy the time frame alleged in Count VI. Count VI alleged that Bennett committed fondling or touching of P.B. occurring sometime between 1999 or 2000.

P.B. testified about another incident occurring on the evening of April 2, 2003, which was specifically charged as Count XX. However, Count V alleged that Bennett committed fondling or touching of P.B. occurring sometime between 1998 to 2003. The jury could have chosen to con-

vict Bennett of child molest under Count V instead of Count XX. The incident on the evening of April 2, 2003, would fall within the time frame of the allegations contained in Count V. Therefore, Bennett has failed to establish that the jury used the same evidentiary facts to establish the essential elements of more than one offense.

 Last, Bennett argues that his sentence is inappropriate in light of the nature of the offenses and the character of the offender. More specifically, Bennett argues that the sentence he received is unduly harsh considering the circumstances.

 Indiana Appellate Rule 7(B) allows a court on review to revise a sentence if the sentence is inappropriate in light of the nature of the offense and the character of the offender. Although Rule 7(B) does not require this court to be extremely deferential to a trial court's sentencing decision, this court still gives due consideration to that decision. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind.Ct.App.2007). This court also recognizes the unique perspective a trial court brings to its sentencing decisions. *Id.* In addition, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Id.*

Bennett was convicted of two counts of Class D felony child exploitation based upon his possession of pornography, some of it involving minors, and three counts of Class C felony child molestation, involving his conduct with his adopted daughter P.B.

Regarding the nature of the offense, Bennett used his position of trust, as a father, to commit the crimes. In fact, he insisted to P.B. that it was because they were family members, because they were father and daughter, that they should have sexual relations. This behavior was repetitive in nature. Furthermore, Bennett used the pornographic materials in his possession to establish to P.B. that other minors and adults engaged in that kind of behavior. Last, the minors who were exploited in those pornographic materials were victimized by Bennett in the sense that without a demand for those materials, fewer minors likely would be harmed.

Regarding the character of the offender, Bennett had no prior criminal history. However, Bennett fled the jurisdiction just prior to his trial date, and assumed a false identity in order to mislead authorities. Bennett was released on a bond posted by his mother at the time he fled the jurisdiction. The trial court specifically found that Bennett was not remorseful.

The trial court sentenced Bennett to a term of two years for each of the Class D felonies, and to a term of seven years for two of the Class C felonies, and a term of six years for the third Class C felony conviction. The trial court then ordered Bennett to serve twenty years executed with five years suspended to probation. Clearly, there was a mathematical error in the computation of the aggregate sentence. Therefore, we exercise our authority to correct Bennett's sentence to a term of twenty years executed, with four years suspended to probation.

Bennett's maximum sentence exposure after his convictions was thirty years. Bennett received a twenty-four year sentence with twenty years executed and four years suspended to probation. Children were victimized in each of the felonies resulting in conviction. Bennett has failed to establish that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

DARDEN, J., and BARNES, J., concur.